**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA (Ocala)**

| | |
|---|---|
| JAMES E. LYONS<br><br>          Plaintiff,<br><br>v.<br><br><br>BILLY WOODS,<br>in his official capacity as<br>Sheriff of MARION County;<br>ANNA MARIE MACAFEE,<br>ALISHA TORRES,<br>JARRED BRYANT,<br>WILLIAM KONOPINKSI,<br>JOSHUA WELLS,<br>JOSHUA ANDERSON,<br>ZACHARY MARCELLO,<br>DYLAN ROBERTS,<br>HEART OF FLORIDA HEALTH<br>CENTER,<br>JOHN LITTLE,<br>DORISVEL RAMOS, and<br>IVETTE COLON-REYES.<br><br>          Defendants. | CIVIL DIVISION<br><br>Case No. 5:23-cv-00176 |

## SECOND AMENDED COMPLAINT
(Adding Count IX)[i]

Plaintiff, JAMES E. LYONS, by and through undersigned counsel, JESSICA

J. TRAVIS, and the law firm of DEFENDBREVARD.COM, and JERROD WILLIAMS

and LEE FAIRCHILD of LAWFIRMOCALA.COM sues Defendants, BILLY WOODS,

in his official capacity as Sheriff of Marion County, ANNA MARIE MACAFEE,

ALISHA TORRES, JARRED BRYANT, WILLIAM KONOPINKSI, JOSHUA WELLS,

JOSHUA ANDERSON, ZACHARY MARCELLO, DYLAN ROBERTS, HEART OF

FLORIDA HEALTH CARE, JOHN LITTLE, and DORISVEL RAMOS, and demands a jury trial on the issues herein.  In support thereof, the Plaintiff would state and assert:

1.    This is an action under federal and state law by JAMES E. LYONS arising from Defendants' wrongful acts resulting in his paralysis after JAMES E. LYONS was held in custody after posting bond and was denied needed, prescribed, medical care during a critical period, and suffered an unnecessary and objectively unreasonable use of force, resulting in his suffering and injury.

2.    In sum, LYONS brings the following claims.  Counts IX is added by virtue of this amendment:

Count I:    OBJECTIVELY UNREASONABLE FORCE as to MACAFEE, TORRES, BRYAN, KONOPINSKI, WELLS, ANDERSON, MARCELLO, and ROEBRTS (Individual Capacity).

Count II:    FAILURE TO INTERVENE as to MACAFEE, TORRES, BRYAN, KONOPINSKI, WELLS, ANDERSON, MARCELLO, and ROBERTS (Individual Capacity).

Count III:   DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS as to MACAFEE, TORRES, BRYAN, KONOPINSKI, WELLS, ANDERSON, MARCELLO, and ROBERTS (Individual Capacity).

Count IV:   FAILURE TO IMPLEMENT AND ENFORCE POLICIES, CUSTOMS, AND TRAINING TO PREVENT OBJECTIVELY UNREASONABLE FORCE, FAILURE TO INTERVENE, AND DELIBERATE INDIFFERENCE (*MONELL* CLAIM), as to Sherriff WOODS (Official Capacity).

Count V:    FAILURE TO IMPLEMENT AND ENFORCE POLICIES, CUSTOMS, AND TRAINING TO PROVIDE FOR RELEASE UPON POSTING BOND AND FOR CONTINUING MEDICAL CARE (*MONELL* CLAIM), as to Sherriff WOODS (Official Capacity).

Count VI:   WANTON AND WILLFUL DISREGARD FOR HUMAN RIGHTS

OR SAFETY, as to MACAFEE, TORRES, BRYAN, KONOPINSKI, WELLS, ANDERSON, MARCELLO, and ROERTS (Individual Capacity).

Count VII: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS as to LITTLE, RAMOS, and COLON-REYES (Individual Capacity).

Count VIII:  NEGLIGENCE, as to Sheriff Woods (Official Capacity).

Count IX:  MEDICAL MALPRACTICE, as to Sheriff Woods (Official Capacity).

## JURISDICTION AND VENUE

3.     Plaintiff's claims are predicated, in part, upon 42 U.S.C. § 1983, authorizing actions to redress deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions under 42 U.S.C. § 1983.

4.     Jurisdiction is founded upon 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States; 28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and 28 U.S.C. § 1343, as this is a civil action seeking to redress deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States.

5.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as the events sued upon occurred in this judicial district.

7.    Plaintiff timely served notice as required by § 768.28, Florida Statutes and all conditions precedent to this action have been performed or waived.

**PARTIES**

8.    At all times material hereto, Plaintiff JAMES E. LYONS was a resident of Marion County, Florida, was a detainee at the Marion County Jail, and is the individual injured as a result of the incident referenced herein at the jail in Marion County, Florida.

9.    At all times material hereto, BILLY WOODS was Sheriff of Marion County, an elected constitutional officer responsible for the operation of the Marion County Jail.  He is sued in his official capacity.

10.   At all times material hereto, ANNA MARIE MACAFEE was a corrections officer at the Marion County Jail.  She is sued individually.

11.   At all times material hereto, ALISHA TORRES was a corrections officer at the Marion County Jail.  She is sued individually.

12.   At all times material hereto, JARRED BRYANT was a corrections officer at the Marion County Jail.  He is sued individually.

13.   At all times material hereto, WILLIAM KONOPINSKI was a corrections officer at the Marion County Jail.  He is sued individually.

14.   At all times material hereto, JOSHUA WELLS was a corrections officer at the Marion County Jail.  He is sued individually.

15.   At all times material hereto, JOSHUA ANDERSON was a corrections officer

at the Marion County Jail.  He is sued individually.

16. At all times material hereto, ZACHARY MARCELLO was a corrections officer at the Marion County Jail.  He is sued individually.

17. At all times material hereto, DYLAN ROBERTS was a corrections officer at the Marion County Jail.  He is sued individually.

18. At all times material hereto, HEART OF FLORIDA HEALTH CENTER was the contracted health care provider for the Marion County Jail/ BILLY WOODS.

19. At all times material hereto, JOHN LITTLE was an employee of HEART OF FLORIDA HEALTH CENTER.  He is sued individually.

20. At all times material hereto, DORISVEL RAMOS was an employee of HEART OF FLORIDA HEALTH CENTER.  She is sued individually.

21. At all times material hereto, IVETTE COLON-REYES was an employee of HEART OF FLORIDA HEALHT CENTER.  She is sued individually.

22. At all times relevant hereto, all the above Defendants acted under color of law.

**FACTS**

23. On March 15, 2021, at about 12:26 a.m., JAMES E. LYONS (LYONS) was arrested by a Marion County Deputy Sheriff in Marion County Case No. 2021-CF-1070.

24. At the age of 48, this was LYONS's first arrest.

25. The charges were subsequently dismissed on September 24, 2021.

26. On the date of his arrest, LYONS was arrested at his residence and

transported to the Marion County Jail (Jail) without incident.

27.   On March 15, 2021, the Jail's contracted healthcare provider was HEART OF FLORIDA HEALTH CENTER (HEART OF FLORIDA).

28.   Prior to his arrest, LYONS had been diagnosed with a genetic condition called ankylosing spondylosis (aka, spondylitis).

29.   Jail intake records note LYONS's deformity stating, "Chin to Chest Deformity, Curvatures to Neck and Spine, Carpal Tunnel under Mobility Restrictions" *Intake records*, p. 4.

30.   The condition is visible in LYONS's booking photo which shows his head tilted downward to the extent that his chin appears to touch his chest.

31.   Prior to his arrest, LYONS was taking morphine, Zoloft, and diazepam on a daily basis.

32.   On March 15, 2021 at 3:23 a.m., the Jail conducted intake on LYONS and noted that LYONS reported taking Zoloft and diazepam, which is a benzodiazepine that can result in seizures upon withdrawal.  The records also note that LYONS received disability for his condition and it was recommended that LYONS be placed on a lower bunk due to his condition.

33.   On March 15, 2021, at 4:04:22 a.m., a nurse employed by HEART OF FLORIDA HEALTH CENTER ordered morphine and diazepam for LYONS.

34.   The requested start date for the morphine and diazepam was the next day, March 16, 2021, and the end date was March 24, 2021.

35.   Jail records do not show that the morphine or diazepam was ever provided to LYONS during his incarceration at the Marion County Jail.

36.   The morphine and diazepam orders were cancelled on March 18, 2021 after LYONS's release by ambulance to the hospital.

37.   On March 17, 2021, LYONS posted bond.

38.   However, LYONS was not released from custody on March 17, 2021.  Lyons was only released when he was taken by ambulance on March 18, 2021.

39.   On March 18, 2021 at 5:11 a.m., jail video shows LYONS falling to the Jail floor in apparent seizure.  His body curled up and became rigid and his legs shook.

40.   The video shows another inmate bend down to assist LYONS by supporting his head and rubbing his back as if to calm him down.  Other inmates can be seen on the video waving to corrections officers and pointed to LYONS. *B-POD Section E Video.*

41.   At approximately 5:12 a.m., the video shows a female officer enter the pod and place a pillow under LYONS's head.

42.   This officer was later determined to be ANNA MARIE MACAFEE (MCAFEE).

43.   The video shows a second female officer quickly arrive.

44.   This officer was later determined to be AISHA TORRES (TORRES).

45.   Mr. Lyons was placed in a "recovery position" on his side.  *Incident Report*, p. 4.

46.   At 5:13 a.m., the video shows a male officer walk over to LYONS and the two female officers, and then walk away.

47.   This officer was later determined to be JARRED BRYANT (BRYANT).

48.   At 5:14 a.m., the video shows a different male officer walk to the location

of LYONS and the two female officers.

49. This officer was later determined to be WILLIAM KONOPINSKI (KONOPINSKI).

50. The video then shows the officers grab LYONS's arms and began to roll him over to a position that placed him on his stomach and face down on the concrete floor.

51. Due to LYONS's medical condition, his head is curled into his chest and his forehead pressed into the ground.

52. The subsequent incident report claimed that LYONS "grabbed [MACAFEE's] both hands in a strong and painful manner. [She] was not able to get her hands free." *Incident Report, Macafee*, p. 4.

53. However, the video shows MACAFEE to appear calm, moving her arms freely without any struggle and without asking BRYANT for help as he approaches and then walks away.

54. The video shows more officers arrive and begin efforts to force LYONS to face downward onto his stomach.

55. The video shows the officers press LYONS against a cot which is flipped over.

56. The video shows LYONS sprayed with pepper spray.

57. The video shows LYONS is given an electric shock with an Electronic Disabling Device (EDD), aka a 'taser.'

58. The Jail incident and use of force reports state that KONOPINSKI issued two cycles of his EDD and that BRYANT administered a "dry stun."

*Incident Report*, p. 3 and 4.

59. At least 7 officers pressed Mr. Lyons down onto his stomach which, again, due to his condition, is a head-down position.

60. In addition to the initial officers, jail reports state that these officers included JOSHUA WELLS (WELLS), JOSHUA ANDERSON (ANDERSON), ZACHARY MARCELLO (MARCELLO), and DYLAN ROBERTS (ROBERTS).

61. Officers WELLS, MARCELLO, and BRYANT handcuffed LYONS behind his back and applied leg irons.  *Incident Report*, p. 4.

62. At 5:30 a.m., the video shows officers lift LYONS from the floor by his legs and arms, which are handcuffed behind him.

63. Per the jail's "Greenteam Use of Force Report," the officers involved in the handcuffing of LYONS were KONOPINSKI, WELLS, MARCELLO, and BRYANT.

64. A spit hood is placed on LYONS's head even though he appears on video as limp and unconscious and not actively spitting.

65. LYONS is carried face-down and placed headfirst onto the stretcher without care.  No support or bracing is given.  LYONS's head is pressed into the stretcher.  The rest of his body is pivoted onto the stretcher.

66. Part of LYONS's body hangs from the stretcher as he is carried out of the pod.  He appears pale and catatonic.  *B-POD Section E Video.*

67. Though no video has been provided, the use of force report claims that LYONS was placed in the shower for decontamination at 5:30 a.m. *Incident Report, p. 4.*

68.  At 6:02 a.m., LYONS is seen by Nurse JOHN LITTLE (LITTLE) after he was brought into the infirmary on a stretcher.

69.  LITTLE noted, "two bilateral cuts on the wrists from cuffs.  Inmate is missing 3 top right molar (teeth) from the fight.  Tongue has scratch on it."

70.  LYONS was kept in the infirmary for observation.

71.  However, no medication was initially given to LYONS at the infirmary.

72.  The jail records state that a signal 46, sick or injured person, was called at 6:03 a.m. by an officer because an inmate was having a seizure.

73.  Further, the medical records note, "inmate has abnormal curve to top of his spine," and, "inmate states he takes morphine on a daily basis outside jail." *Medical Reports,* p. 18.

74.  After a shift change, Nurse DORISVEL RAMOS (RAMOS) assumed the care of LYONS.

75.  RAMOS found LYONS still laying on a stretcher.

76.  RAMOS noted that LYONS was complaining of pain to his neck and head and numbness to left arm.  She observed "moderate lump to left forehead, left temple and left side of neck."  Bruising was also seen on the left wrist and ankle.  *Medical Records*, p. 23

77.  At 9:15 a.m., RAMOS noted that LYONS's blood pressure had dropped to 72/49. *Medical Records,* p. 25.

78.  At 9:21 a.m., Dr. COLON-REYES (COLON-REYES) completed an Emergency Department Referral which states, "Syncopal event, new onset seizure, supraclavicular hematoma episode" indicating that Mr. Lyons had

fainted, had a seizure, had bruising above his clavicle and was experiencing low blood pressure. *Medical Records*, p. 27.

79.  For the first time, Ativan, an anti-seizure medication commonly given for withdrawals, was prescribed. *Medical Records*, p. 23.

80.  Jail records claim that LYONS was released from the jail at 9:10 a.m.

81.  However, at approximately 9:19 a.m., Officer Melissa Counts called 911 from the jail and reported a use of force inmate with low blood pressure and bruising on the neck that needs to be transferred. *911 audio.*

82.  Dispatch noted in their Incident Detail Report that the 911 "[c]aller did not wish to answer questions."

83.  At 9:31 am., an ambulance arrived at the jail.

84.  The ambulance departed with Mr. LYONS at 9:43 am.

85.  EMS records noted that,

> "Pt has new redness and bruising to left side of face and neck due to force.  Pt has possible supraclavicular hematoma stated staff. Pt has a spinal issue so his neck is normally bent down.  Pt has been in the jail for 3 days now and was bonded out today.  Pt is wet due to staff putting pt into the shower.  Pt stated he does not remember what happened but knows he was put into the shower. Pt was assisted to stretcher via sheet method, and secured. ... Pt stated he has some pain where bruising is on his face and neck." *Marion County Fire Rescue Records,* p. 5.

86.  LYONS was first taken to Advent Health but was eventually transported to Shands Hospital due to the serious nature of his injuries.

87.  The EMS team that transported LYONS to Shands noted,

> "[r]ight and left eye swelling and contusion, Contusion to right side of forehead with redness down to left eye, contusion left cheek, contusion to right ear.  Large contusion left side of neck and shoulder.  Small abrasion behind left ear.  Contusion and

redness to right shoulder and neck.  Staff states C-5, C-6, C-7 fracture."

"contusion right chest across breast and under breast. About 6 inches in length.  Small puncher wound left lower QUADRANT."

"Not able to assess back due to Pt. needing to stay in position found.  Pt needs to stay sitting upright per Dr. Kelly."

"left arm contusion around wrist.  Contusion left elbow. Contusion upper left arm.  Right upper arm contusion on inside. Contusion and scrapes around right wrist.  Contusion upper right arm back of arm and shoulder.  Contusion to right shoulder.  Contusion to right elbow.  Abrasion to left knee. Contusion around left ankle with abrasion to outside of ankle. Contusion to right inside of knee.  Contusion ot [sic] right ankle and abrasion to inside right ankle Abrasion just below little toe. Contusion across right knuckles."

"Right hand and leg side loss of sensation but is able to feel touch.  No deficits on left side."

"Pt appears in pain at this time.  Staff states Pt was being released jail yesterday or today and had a seizure not sure of time frame and had to be restrained by police.  Pt states he does not remember having seizure but states he woke up tied to a chair in the shower and being beaten by police.  Pt states he does remember being tased [sic] by police.  Pt did not state what he was being beaten with." *Marion County Fire Rescue Records,* p. 13.

88.     After his treatment at Shands Hospital, LYONS was diagnosed cervical spinal cord injury with a subsequent C5-C6 unstable fracture dislocation with severe spinal instability requiring Halo Fixation that has resulted in quadriplegia.

89.     From March 15 to March 18, 2021, the Jail's policies stated, in relevant part:

    Operations Directive 6540.00  Jail Medical Facility
    I.  It is the policy of the Marion County Sheriff's Office to

ensure the physical and mental well-being of all inmates incarcerated in the Marion County Jail.

Operations Directive 6540.20  Medical Response, General
A.  In the event of an emergency involving inmates or staff, medical shall be contacted by the most expedient means available, such as radio or telephone.

Operations Directive, Force Guidelines
Some situational factors that may be considered:
• Severity of the crime
• Subject is an immediate threat
• Subject's mental or psychiatric history, if known to the officer
• Subject's violent history, if known to the officer
• Subject's combative skills
• Subject's access to weapons
• Innocent bystanders that could be harmed
• Number of subjects verses number of officers
• Duration of confrontation
• Subjects' size, age, weight, and physical condition
• Officer's size, age, weight, physical condition, and defensive tactics expertise.

\*\*\*

I.  Purpose:
That all employees remain cognizant of every person's right to life.  Officers shall use only that degree of force necessary to perform their official duties and shall not strike or use physical force against any person except when necessary in the performance of official duties.

Operations Directive 4030.15. Agency Policy On Use Of Force
A.  Less Lethal Force- In certain circumstances, an officer may find it necessary to use non-deadly force in the form of physical restraint, chemical agent, or an impact weapon.  Less Lethal Force should only be used when absolutely necessary and only to the degree needed to overcome resistance, effect a lawful arrest, or protect the officer or another person from bodily harm.  The degree of force used will be consistent with training and the Force Guidelines.

B.1.a.  The use of neck restraints or similar weaponless control techniques with potential for serious injury is not an acceptable

use of force, unless deadly force is justified.

***

E.  After use of any force, the appropriate medical aid will be rendered, through first aid by a deputy on the scene, and/ or, if necessary, by summoning the appropriate medical assistance.

Operations Directive 4030.25  Restraint Devices
A.  Deputies should, in most cases, handcuff persons arrested or placed in custody.  Deputies may, however, determine the practicality or necessity of using handcuffs in situations such as transporting young juveniles, extremely elderly persons, senile or mentally ill persons, or when arresting seriously deformed, injured or ill persons.  It is the deputy's responsibility to protect him/ herself, the public and the persons in custody.  The safety of all concerned should be the deciding factor.

B.  The primary purpose in using handcuffs and other restraints is to:
     1.      Maintain control of the person in custody (arrestee, baker act, etc.)
     2.      Provide safety for the officer, the arrestee, and general public; and
     3.      Minimize the possibility of the situation escalating."

***

G.  If a subject is sick, injured, or physically handicapped and handcuffs are impractical due to the condition of the subject, alternate-restraining devices should be utilized unless the condition of the subject renders them harmless.
     1.      Extreme care must be taken to ensure that the use of restraining devices will not worsen the condition or injury of the subjects.
     2.      Anytime a subject becomes sick or injured, their conditions must be checked by medical personnel as soon as it is safe and practical.

***

J.  The spit mask shall be used as a restraint to prevent subjects from spitting on arresting officers.

Operations Directive 4030.30  Less Lethal Weapons
D.  The use of pepper spray/ foam shall be left to the discretion of each individual deputy.
1.  Pepper spray/ foam should only be used when absolutely necessary to overcome the subject's resistance and will be consistent with training and Use of Force Guidelines.

Operations Directive 4030.40  Decontamination Procedures
B.  A person(s) who has been contaminated by a chemical agent will not be left unattended by Sheriff's Office personnel throughout the contamination period.  During periods of contamination, the contaminated person(s) will be continuously monitored for valid signs of medical complaint or the development of medical problems.  If medical problems are detected, medical assistance will be sought immediately.

Operations Directive 4034.0, Electronic Disabling Devices (EDD)
A deputy's decision to utilize and EDD should always depend upon and take into account subject and deputy factors such as age, size, weight, the subject's apparent ability to physically challenge the officer or do harm to himself/ herself or others, and the seriousness of the incident.

## COUNT 1
## OBJECTIVELY UNREASONABLE FORCE
## AS TO MACAFEE, TORRES, BRYANT, KONOPINSKI, WELLS, ANDERSON, MARCELLO, AND ROBERTS (Individual Capacity)
### IN VIOLATION OF FOURTEENTH AMENDMENT, DUE PROCESS AND PURSUANT TO 42 U.S.C. § 1983

90.  Plaintiff re-alleges paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

91.  All Defendants named herein owed a duty to LYONS to not use objectively unreasonable force against him. A pretrial detainee's Fourteenth Amendment excessive force claim is governed by a rule of "objective reasonableness." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) ("[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."); *Piazza v.*

*Jefferson Cty.*, 923 F.3d 947, 951 (11th Cir. 2019).

92.   All Defendants named herein breached their duty by authorizing, assisting, or engaging in the following uses of force, either individually or collectively, that did not serve a penological purpose and/or were objectively unreasonable:

1.   Responding to LYONS's medical emergency (suspected seizure) with an unnecessary, objectively unreasonable, and/ or excessive use of force;

2.   Forcibly positioning LYONS on his stomach so that he faced head down into the concrete floor;

3.   Applying pressure to LYONS's body including in the area of his head, neck and back;

4.   Hitting, punching, kicking, elbowing, or otherwise inflicting blows on LYONS;

5.   Using an Electronic Disabling Device (EDD/ 'taser') on LYONS;

6.   Using pepper spray or other irritants on LYONS;

7.   Permitting more persons than necessary to simultaneously use force against LYONS;

8.   Placing LYONS in a restraint position with his hands handcuffed to the rear;

9.   Placing a spit mask over LYONS head without first decontaminating him from pepper spray;

10.   Lifting LYONS by his arms as he was in a restraint position with his

hands handcuffed to the rear;

11.    Placing LYONS on the stretcher headfirst without caution and without bracing or support to his head and neck; and

12.    Using or permitting uses of force that did not comply with policy and/or training.

93.    As a direct and proximate cause of the Defendants' actions breaching their duty, LYONS suffered emotional and physical injury, physical pain, and suffering, and ultimately, paralysis; has incurred medical expenses and is expected to need long-term treatment in a skilled nursing facility; and has been obligated to retain legal counsel to vindicate the violation of rights and the damages inflicted by the Defendants' actions, entitling him to attorney's fees and costs under 42 USC § 1988.

**COUNT II**
**FAILURE TO INTERVENE**
**AS TO MACAFEE, TORRES, BRYANT, KONOPINSKI, WELLS, ANDERSON, MARCELLO, AND ROBERTS** (Individual Capacity)
IN VIOLATION OF FOURTEENTH AMENDMENT, DUE PROCESS
AND PURSUANT TO 42 U.S.C. § 1983

94.    Plaintiff re-alleges paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

95.    All Defendants named herein owed LYONS a duty to intervene in the face of unlawful conduct or to ensure his physical and medical safety.  To establish a failure to intervene claim, a Plaintiff must establish that a Defendant officer was in a position to intervene to stop another officer's unlawful conduct and had an appreciable opportunity to do so.  *See Riley*

*v. Newton*, 94 F. 3d 632, 635 (11th Cir. 1996).

96. The Defendants named herein were each in a position to intervene and had an appreciable opportunity to stop each other's unlawful conduct but failed to do so.

97. The Defendants named herein were each in a position to intervene had an appreciable opportunity to ensure LYONS's physical and medical safety but failed to do so.

98. As a direct and proximate cause of the Defendants' actions breaching their duty, LYONS suffered emotional and physical injury, physical pain, and suffering, and ultimately, paralysis; has incurred medical expenses and is expected to need long-term treatment in a skilled nursing facility; and has been obligated to retain legal counsel to vindicate the violation of rights and the damages inflicted by the Defendants' actions, entitling him to attorney's fees and costs under 42 USC § 1988.

**COUNT III**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**
**AS TO MACAFEE, TORRES, BRYANT, KONOPINSKI, WELLS,**
**ANDERSON, MARCELLO, AND ROBERTS** (Individual Capacity)
IN VIOLATION OF FOURTEENTH AMENDMENT, DUE PROCESS
AND PURSUANT TO 42 U.S.C. § 1983

99. Plaintiff re-alleges paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

100. All Defendants named herein owed a duty to LYONS to refrain from acting with deliberate indifference to a serious medical need.  In order to prove deliberate indifference to a serious medical need, a Plaintiff must

demonstrate: (1) a government official's subjective knowledge of a risk of serious harm; (2) the government official's disregard of the risk; (3) by conduct that is more than mere negligence. *See Nam Dang, by and through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017). Deliberate indifference may be established by a failure to provide medical care and/or by excessive delay in providing medical care. *Lelieve v. Chief of Police Manuel Oroso*, 846 F.Supp.2d 1294, 1304 (S.D. Fla. Feb. 14, 2012).

101. Each Defendant understood that LYONS suffered from a medical condition that caused an abnormal curvature of his spine.

102. Each Defendant understood that LYONS suffered from a medical emergency that appeared to be a seizure.

103. Each Defendant knew that LYONS medical condition would cause an objectively reasonable person to proceed with caution such that the fragility and abnormal curvature of his spine was not injured or aggravated.

104. Each Defendant knew that LYONS needed immediate emergency medical care for the apparent seizure.

105. Defendants deliberately failed to treat LYONS with care and caution necessary due to his medical condition(s).

106. The Defendants deliberately failed to timely provide LYONS with timely access to the requisite care or transfer LYONS to a hospital for emergency medical care.

107. As a direct and proximate cause of the Defendants' actions breaching their

duty, LYONS suffered emotional and physical injury, physical pain, and suffering, and ultimately, paralysis; has incurred medical expenses and is expected to need long-term treatment in a skilled nursing facility; and has been obligated to retain legal counsel to vindicate the violation of rights and the damages inflicted by the Defendants' actions, entitling him to attorney's fees and costs under 42 USC § 1988.

**COUNT IV**
**FAILURE TO IMPLEMENT AND ENFORCE POLICIES, CUSTOMS AND TRAINING TO PREVENT OBJECTIVELY UNREASONABLE FORCE, FAILURE TO INTERVENE, AND DELIBERATE INDIFFERENCE (*MONELL* CLAIM) AS TO SHERIFF WOODS (Official Capacity)**
IN VIOLATION OF FOURTEENTH AMENDMENT, DUE PROCESS
AND PURSUANT TO 42 U.S.C. § 1983

108.   Plaintiff re-alleges paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

109.   Defendant WOODS owed LYONS a duty to refrain and cause his agents to refrain from using objectively unreasonable force, from failing to intervene, and from acting with deliberate indifference by implementing and enforcing policies and customs and providing adequate training to his agents and contractors.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1987).

110.   Defendant WOODS breached his duty by failing to implement or enforce policies and customs or provide adequate training that would prevent his agents from using objectively unreasonable force on LYONS, prevent them from failing to act when LYONS was experiencing a medical emergency or when objectively unreasonable force was used on LYONS, and prevent

them from acting with deliberate indifference to LYONS's medical needs and upon witnessing objectively excessive force being used on LYONS, through the following actions or in-actions:

a. Knowingly failing to enforce internal Jail policies and training protocol.

b. Knowingly failing to implement and enforce policies, customs, or training for the jail that met industry standards.

c. Knowingly failing to implement and enforce medical screening and care policies, customs, or training that met industry standards.

d. Knowingly failing to implement and enforce policies, customs, and training that would eliminate or reduce seizures including, but not limited to, administration of medication.

e. Knowingly failing to implement and enforce polices, customs, and training that would monitor inmates with health conditions such as LYONS's or inmates who were at risk of seizure.

f. Knowingly failing to implement and enforce policies, customs, and training that would prevent or minimize the use of force, pepper spray, Electronic Disabling Devices, spit hood, and restraint measures on someone with LYONS's conditions or on someone having a seizure.

g. Knowingly implementing policies, customs, or training that allowed the use of force, pepper spray, Electronic Disabling Devices, spit hood, and restraint measures on someone with LYONS's conditions

or on someone having a seizure.

h. Knowingly failing to implement and enforce policies, customs, and training that would alert deputies and agents to LYONS's condition.

i. Knowingly failing to implement and enforce internal policies, customs, and training that would provide oversight to insure that the Jail's health care contractor HEART OF FLORIDA and agents provided adequate medical care.

j. Knowingly fail to enforce policies, customs, and training that would provide internal oversight in the Jail to ensure that policies, customs and training met industry standards and did not result in operational deficiencies or violate the rights and health of inmates.

k. Knowingly creating a custom and that led to a non-transparent and inefficient culture resulting in a lack of adequate medical care, objectively unreasonable use of force on LYONS, a person with a fragile medical condition suffering from a seizure, a delay of emergency medical care, inaccurate reports, and operational deficiencies.

111. Defendant's knowing failure to properly implement and enforce policies, customs, and training was a substantial factor leading to LYONS's foreseeable injury.

112. As a direct and proximate cause of the Defendant's breach of his duty, LYONS suffered emotional and physical injury, physical pain, and suffering, and ultimately, paralysis; has incurred medical expenses and is

expected to need long-term treatment in a skilled nursing facility; and has been obligated to retain legal counsel to vindicate the violation of rights and the damages inflicted by the Defendant's actions, entitling him to attorney's fees and costs under 42 USC § 1988.

**COUNT V**
**FAILURE TO IMPLEMENT AND ENFORCE POLICIES, CUSTOMS, AND TRAINING TO PROVIDE FOR RELEASE UPON POSTING BOND AND FOR CONTINUING MEDICAL CARE (*MONELL* CLAIM)**
**AS TO SHERIFF WOODS (Official Capacity)**
IN VIOLATION OF FOURTEENTH AMENDMENT, DUE PROCESS
AND PURSUANT TO 42 U.S.C. § 1983

113.   Plaintiff re-alleges paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

114.   Defendant WOODS owed LYONS a duty to release him upon posting bond and refrain from intentionally restraining him under circumstances that were unreasonable and unwarranted and without legal authority through implementing and enforcing policies and customs and providing for adequate training to his agents and contractors regarding the timely release of inmates after posting bond.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1987).

115.   Defendant WOODS owed LYONS a duty to continue to provide medical care until he was released through implementing and enforcing policies and customs and provide adequate training to his agents and contractors regarding the continued medical care of inmates so long as they remained incarcerated at the Marion County Jail.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1987).

116. Defendant breached his duty by failing to implement and enforce policies and customs or provide adequate training that would prevent agents from failing to release LYONS after posting bond and from holding him for an unreasonable and unwarranted amount of time after bond was posted and without adequate medical care.

117. Defendant's knowing failure to properly implement and enforce policies, customs, and training was a substantial factor leading to LYONS's foreseeable injury.

118. As a direct and proximate cause of the Defendant's action breaching the duty, LYONS suffered a loss of freedom, a denial of medical care, emotional and physical injury, physical pain, and suffering, and ultimately, paralysis; has incurred medical expenses and is expected to need long-term treatment in a skilled nursing facility; and has been obligated to retain legal counsel to vindicate the violation of rights and the damages inflicted by the Defendant's actions, entitling him to attorney's fees and costs under 42 USC § 1988.

## COUNT VI
## WANTON AND WILLFUL DISREGARD FOR HUMAN RIGHTS OR SAFETY
## AS TO MACAFEE, TORRES, BRYANT, KONOPINSKI, WELLS, ANDERSON, MARCELLO, AND ROBERTS (Individual Capacity)
### IN VIOLATION OF FLORIDA STATUTE § 768.28(9)

119. Plaintiff re-alleges paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

120. Each Defendant owed LYONS a duty to exercise reasonable care in safeguarding LYONS and to refrain from acting in a manner exhibiting

wanton and willful disregard for LYONS's human rights and/or safety.  *See*
Fla. Stat. § 768.28(9).

121.   The Defendants each breached this duty by wantonly and willfully
disregarding LYONS's human rights or safety, as specifically set forth in
Counts I, II and III.

122.   As a direct and proximate cause of the Defendants' actions breaching their
duty, LYONS suffered emotional and physical injury, physical pain, and
suffering, and ultimately, paralysis; has incurred medical expenses and is
expected to need long-term treatment in a skilled nursing facility; and has
been obligated to retain legal counsel to vindicate the violation of rights
and the damages inflicted by the Defendants' actions, entitling him to
attorney's fees and costs.

**COUNT VII**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**
**AS TO LITTLE, RAMOS AND COLON-REYES** (Individual Capacity)
IN VIOLATION OF FOURTEENTH AMENDMENT, DUE PROCESS
AND PURSUANT TO 42 U.S.C. § 1983

123.   Plaintiff re-alleges paragraphs 1 through 89 are incorporated by reference
as if fully set forth herein.

124.   All Defendants named herein owed a duty to LYONS to refrain from acting
with deliberate indifference to a serious medical need.  In order to prove
deliberate indifference to a serious medical need, a Plaintiff must
demonstrate: (1) a government official's subjective knowledge of a risk of
serious harm; (2) the government official's disregard of the risk; (3) by
conduct that is more than mere negligence. *See Nam Dang, by and through*

*Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017). Deliberate indifference may be established by a failure to provide medical care and/or by excessive delay in providing medical care. *Lelieve v. Chief of Police Manuel Oroso*, 846 F.Supp.2d 1294, 1304 (S.D. Fla. Feb. 14, 2012).

125. Each Defendant understood that LYONS condition presented a risk of serious harm because:

    a. LYONS suffered from a medical condition that caused an abnormal curvature of his spine.

    b. LYONS had been prescribed medication prior to his incarceration that could induce seizures upon withdrawal.

    c. LYONS suffered from a medical emergency that appeared to be a seizure.

    d. LYONS was involved in an altercation that resulted in a use of force by Jail deputies.

126. Each Defendant knew that LYONS medical condition would cause an objectively reasonable person to:

    a. Treat LYONS with care and caution necessary due to his medical condition(s).

    b. Notify deputies and Jail personnel that they should proceed with caution such that the fragility and abnormal curvature of LYONS's spine was not injured or aggravated.

    c.  Prescribe and administer medication to avoid the risk of seizure.

    d.  Provide requisite medical care for the apparent seizure and/ or the use of force.

    e.  Address and stabilize LYONS head and neck given the known fragility and abnormal curvature of his spine and use of force.

    f.  Timely transfer LYONS to the hospital for emergency medical care for the seizure and/ or use of force.

127. The Defendants each breached their duty to LYONS by disregarding the risk of serious harm and failing to timely provide LYONS with objectively reasonable treatment as set forth above.

128. As a direct and proximate cause of the Defendants' actions breaching their duty, LYONS suffered emotional and physical injury, physical pain, and suffering, and ultimately, paralysis; has incurred medical expenses and is expected to need long-term treatment in a skilled nursing facility; and has been obligated to retain legal counsel to vindicate the violation of rights and the damages inflicted by the Defendants' actions, entitling him to attorney's fees and costs under 42 USC § 1988.

**COUNT VIII**
**NEGLIGENCE**
**AS TO SHERIFF BILLY WOODS** (Official Capacity)
IN VIOLATION OF § 768.28, FLORIDA STATUTES

129. Plaintiff re-alleges paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

130. Defendant WOODS owed LYONS several duties which were breached:

a. As policy maker for the Jail, bear legal responsibility for the negligent conduct, acts, and omissions of his employees and agents.

    i. Each individual Defendant deputy or agent of HEART OF FLORIDA and/ or WOODS owed LYONS a duty to exercise reasonable care in safeguarding LYONS while he was in the custody of the Jail. § 768.28(9)(a).

    ii. The individual Defendants breached their duty to LYONS as set forth in Counts I, II, and III and VII.

b. Defendant WOODS, in his official capacity as policy maker for the Jail, bears legal responsibility to implement and enforce policies and customs and to ensure that his employees and agents are adequately trained.

    i. Defendant WOODS has breached his duty to LYONS as set forth in Count IV and V

131. As a direct and proximate cause of the Defendants' aforementioned breach of their duties, LYONS suffered, and continues to suffer, emotional and physical injury, including paralysis, pain, and suffering and has incurred and is expected to need long-term treatment in a skilled nursing facility.

### COUNT IX
### MEDICAL MALPRATICE
**AS TO SHERIFF BILLY WOODS** (Official Capacity)

132. Plaintiff re-alleges paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

133. On or about March 15, 2021, Defendant WOODS accepted LYONS as a

patient for the purposes of all of LYONS's general and specific health conditions by virtue of taking custody of LYONS at the Marion County Jail, observing and noting LYONS obvious chin to chest deformity, that LYONS was on disability, and that LYONS was prescribed medications that may result in seizures upon withdrawal, and by providing, or causing to be provided, health care, albeit inadequate.

134. Defendant WOODS, in his official capacity and as policy maker for the Jail, owed LYONS a duty to provide a standard of care that protected and treated LYONS's health conditions including, but not limited to:

    a. A duty to exercise, and ensure his employees and agents exercised, a level of care, skill, and treatment which, in light of all relevant circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care provider.  § 766.102, Fla. Stat.

    b. A duty to exercise, and ensure his employees and agents exercised, reasonable care in safeguarding LYONS while he was in custody of the Jail.  § 768.28(9)(a), Fla. Stat.

    c. A duty to implement and enforce policies and customs to ensure that his employees and agents are adequately trained to uphold their duties in paragraphs a and b.

135. Defendant WOODS negligently breached his duties and standard of care owed to LYONS by failing to ensure that Defendant WOODS, his employees, and agents were trained and acted in the following manner:

    a. Treat LYONS with the care and caution necessary due to his medical condition(s).

    b. Notify deputies and Jail personnel that they should proceed with caution such that the fragility and abnormal curvature of LYONS's spine was not injured or aggravated.

    c. Prescribe and administer medication to treat LYONS condition(s) and avoid the risk of seizure and continue to do so after LYONS paid his bond but remained incarcerated.

    d. Provide requisite medical care during and after the apparent seizure/ medical emergency and use of force including, but not limited to:  moving and stabilizing LYONS in such a way to prevent aggravation of his spinal condition or injuries; positioning LYONS so that he could not hurt himself or others; monitoring LYONS's blood pressure and other medical indicators; administering anti-seizure, anti-inflammatory, or other medications to prevent aggravating of his condition and swelling of his spinal cord; and timely calling 911 or otherwise transporting LYONS to the hospital.

    e. Follow procedures and polices implemented to care for inmates in the custody of the Marion County Jail.

136. As a direct and proximate cause of the Defendant's actions breaching his duties, LYONS suffered emotional and physical injury, physical pain, and suffering, and ultimately, paralysis; has incurred medical expenses and is expected to need long-term treatment in a skilled nursing facility; and has

been obligated to retain legal counsel to vindicate the violation of rights and the damages inflicted by the Defendants' actions.

137. On March 16, 2023, LYONS's medical malpractice notice - <u>Notice of Intent To Initial [SIC] Litigation For Medical Malpractice</u>, dated March 14, 2023, and attached <u>Verified Medical Opinion Pursuant To Florida Statute 766.203(3) Affidavit of David Bellamy, M.D.</u> (attached as Exhibit A and incorporated in this complaint by reference) - was served on Defendant WOODS.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that a judgment be entered in his favor as follows:

A. Declaratory Judgment: That this Court declare that Defendants' actions violated LYONS' state and federal rights.

B. Compensatory Damages:  That this Court grant any and all damages available by state and federal law, including, but not limited to, violations of rights, conscious physical pain and suffering, embarrassment, humiliation, fear, loss of enjoyment of life, and past and future medical expenses.

C. Punitive Damages: That this Court grant punitive damages as permitted by state and federal law.

D. Reasonable Attorney's Fees and Costs:  That this Court grant attorney's fees and costs as permitted by state and federal law.

E. Pre and Post Judgment Interest:  That this Court grant pre and post

judgment interest as permitted by law.

F.  Such other financial and equitable relief as is reasonable and just.

### **JURY TRIAL DEMAND**

Plaintiff respectfully requests a trial by jury on all claims and issues in this matter that may be tried to a jury.

Respectfully submitted on this 14th day of June 2023.

Respectfully Submitted,


JESSICA TRAVIS, FBN 76701
DefendBrevard.com
1370 Bedford Drive
Suite 104
Melbourne, FL 32940
(321) 728-7280 ph
(321) 728-8020 fx
Jessica@DefendBrevard.com
Eservice1@DefendBrevard.com
Eservice2@DefendBrevard.com
Attorney for Plaintiff

With:
/s/ Lee L. Fairchild
LEE L. FAIRCHILD, FBN 09441
LawFirmOcala.com
207 N. Magnolia Ave.
Ocala, FL 34475
(352)-390-2693
l.fairchild@LawFirmOcala.com
/s/ Jerrod P. Williams
JERROD P. WILLIAMS FBN
207 N. Magnolia Ave.
Ocala, FL 34475
(352)-390-2693
J.WILLIAMS@LawFirmOcala.com
Attorneys for Plaintiff

---

[i] In addition to adding Count IX, typographical errors have been corrected in paragraphs 4, 8, and 33; a repeating stray comma was removed from paragraphs 10, 12, 13, 14, 15, 16 and 17; and Count VIII was renumbered.

EXHIBIT A



Ph: 321-728-7280 / Fx: 321-728-8020
1370 Bedford Drive, Suite 104
Melbourne, Florida 32940
contact@DefendBrevard.com

March 14, 2023

Heart of Florida Health Center
c/o James C. Sawran
200 East Las Olas Blvd., Ste 1820
Ft. Lauderdale, FL 33301

Certified Mail No. 7019 2280 0001 6257 7258 85

Marion County Sheriff's Office
PO Box 1987
Ocala, FL 34478

Certified Mail No. 7019 2280 0001 6257 7292

## NOTICE OF INTENT TO INTITIAL LITIGATION FOR MEDICAL MALPRACTICE

Dear Sir or Madam,

As you are aware from our demand letters dated August 19, 2022, we represent JAMES LYONS. In supplement to the information in the demand letters, we are hereby writing pursuant to Florida Statutes section 766.106 and providing, through this letter, a **formal notice of JAMES LYONS's intent to initiate litigation for medical malpractice against HEART OF FLORIDA HEALTH CENTER ('HEART') and staff and the MARION COUNTY SHERIFF'S OFFICE ('SHERIFF')** As you are aware from the demand letter, this claim arises out of the care and treatment received, or not received, by JAMES LYONS by employees of HEART and the SHERIFF while he was incarcerated at the Marion County Jail on or about March 15 to 18, 2021. The care provided, or lack of care provided, resulted in permanent injuries to JAMES LYONSs as well as substantial emotional and economic damages.

**Please provide a copy of this letter to all business entities with whom HEART and the SHERIFF may have any business or legal relationship.** Pursuant to Florida law, notice to you of this claim is also notice to those entities with which you have a legal relationship. By putting you on notice, we intend to notify all legal entities with which you have a business and/ or legal relationship.

**Upon receipt of this letter, you and your insurer are required to conduct a good faith investigation to determine liability within ninety (90) days from the date of this letter.**

Page 1 of 6

 EXHIBIT A

Ph: 321-728-7280 / Fx: 321-728-8020
1370 Bedford Drive, Suite 104
Melbourne, Florida 32940
contact@DefendBrevard.com

**To assist with your good faith investigation, the following documents were previously provided with the demand letter or are enclosed to assist with your good faith investigation** The demand letter which is hereby incorporated and attached for your reference. Attached to this letter you will find:

- Demand letter
  - Contains list of health care providers for JAMES LYONS after the act of negligence
- Verified Medical Opinion signed by expert Dr. David Bellamy pursuant to Florida Statutes section 766.203.
  - Contains list of records provided by the expert. (Copies included on DVD.)
- DVD with copies of records relied upon by Dr. David Bellamy in rendering his verified medical opinion.
- Authorization for Release of Protected Health Information pursuant to Florida Statutes section 766.1065. The attached Authorization for Release of Protected Health Information does NOT abrogate or supersede the doctor-patient confidentiality laws under Florida Statutes section 456.057(7)(a) and the Federal Health Insurance Portability and Accountability Act at 42 USC § 201 et seq. and 45 CFR § 164.512, and thus, ex parte communications are forbidden.

Records you should already have in your possession because they were previously provided with demand letter by thumb drive:

- Jail Video
- 911 Call
- Dispatch CAD
- EMS records
- Jail Incident Report
- Jail Medical Records

As to a list of health care providers for JAMES LYONS two years prior to the act of negligence, Mr. LYONS has difficulty recalling the names of providers due to this injury and his health condition. Mr. Lyons recalls seeing a Dr. Kuchakulla N. Reddy, 1623 SW 1st Avenue, Ocala, Florida 34471, and filling prescriptions at the CVS at 7563 SE Maricamp Road, Ocala, FL 34472.

Page 2 of 6



EXHIBIT A

Ph: 321-728-7280 / Fx: 321-728-8020
1370 Bedford Drive, Suite 104
Melbourne, Florida 32940
contact@DefendBrevard.com

If you have not already done so in response to the demand letter, **I ask that you provide:**

- The name and contact information for the person handling this claim.
- A statement from any insurance carrier which may provide coverage pursuant to Florida Statutes section 627.4137 which provides the following information:
  - o The name of each of HEARTS' and the SHERIFF's insurers, including excess coverage;
  - o The named insured on each policy which does or may provide coverage;
  - o The limits of liability coverage on each policy, including excess coverage;
  - o A statement of any policy or coverage defenses which insurer reasonably believes is available to each insurer at the time of filing such statement; and
  - o A copy of the policy or polices, including excess coverage.

Also, please consider this letter a formal request, pursuant to Florida Statutes section 766.106(6)(b)2, for you to also **produce the following records**. Electronic copies – thumb drive, CD or shared file – are acceptable.

- Copies of all original medical records, medical bills, correspondence, complete hospital or treatment charges, pathology reports, pathology specimens, pathology logs, pathology slides (originals and recuts), x-rays, radiographic images, MRIs, raw data, audit trail, meta-data, electronic records including nursing and EEG tracings and any other tangible data which pertains or relates in any way to the care and treatment or services rendered by HEART or any HEART staff of the SHERIFF and any SHERIFF staff to JAMES LYONS during his stay at the Marion County Jail on or about March 15 to March 18, 2021 and any other time prior to or subsequent to that time frame.
- Copies of any and all rules, regulations, policies, procedures, protocols and bylaws, or other written documentation of any type pertaining to the care and treatment provided by you to JAMES LYONS that were in effect between March 15 to March 18, 2021.  (An index to these may be provided from which a selection can be made).
- Complete copies of all employment records or lists indicating which HEART or SHERIFF employees provided treatment to JAMES LYONS on or about March 15 to March 18, 2021 and any other time prior to or subsequent to that time frame.

Page 3 of 6

EXHIBIT A



Ph: 321-728-7280 / Fx: 321-728-8020
1370 Bedford Drive, Suite 104
Melbourne, Florida 32940
contact@DefendBrevard.com

- Complete copes of all employment contracts, indemnity agreements, cooperation agreements and joint defense agreements between the SHERIFF and HEART and the SHERIFF or any other health care providers, professional associations, corporations, partnerships, or any other entities relating to the provision of services that were in effect during the month of March 2021.

- All photographs, videotape or slides of regarding the treatment of JAMES LYONS including all photographs and videotapes of all diagnostic testing, radiographic testing, tissue specimens, wound sites, operations, and operative sites.

Also pursuant to Florida Statutes section 766.106(6)(b)(4), **please provide responses to the following:**

1. Do you contend that the actions or omissions of any person or entity caused or contributed to the injuries of JAMES LYONS or may be liable in whole or in part for the damages resulting from the injuries to JAMES LYONS? If so, state the full name and address of each such person or entity, the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have notified such person or entity of your contention.

2. List the name, address, telephone number and last known employer of all employees or persons who are believed or known by you to have any knowledge concerning the care and treatment received by JAMES LYONS and specify the subject matter about which the witness has knowledge.

3. Do you know of any statement or remark made by JAMES LYONS concerning any of his medical care? If so, state the name, address, telephone number and last known employer of each person who heard the statement(s), and the date, time, place, and precisely what JAMES LYONS allegedly said in each statement.

4. Will you provide the opportunity to inspect and examine the original chart which pertains or relates in any way to the care and treatment or services rendered by you or anyone else to JAMES LYONS?

Please pay particular attention to requests number 1. We are relying upon your responses to determine whether to place any other health care providers on notice of this claim. Please

Page 4 of 6

EXHIBIT A



Ph: 321-728-7280 / Fx: 321-728-8020
1370 Bedford Drive, Suite 104
Melbourne, Florida 32940
contact@DefendBrevard.com

understand that, except as to health care providers and other individuals or entities disclosed in response to requests 1, we intend to ask the Court, should it be necessary to proceed with the filing of a lawsuit, to prohibit any argument and the introduction of any evidence regarding the negligence or fault of others.

You are required to cooperate with us in good faith during the pre-suit screening period. The failure to fully and completely respond to requests violates the good faith requirement of the law and will justify dismissal of your defenses if it becomes necessary to file a civil action.

**The documents and information requested in this letter are required, pursuant to Statute, to be produced to us within twenty (20) days from the date of this letter.**

Any **communication or response should be directed to me** and copied to my staff and we will alert Mr. LYONS' other attorneys as needed.:

Attorney - Jessica J. Travis, Jessica@DefendBrevard.com

Paralegal - Aisha Garcia, paralegal@DefendBrevard.com;

Case Manager - Wendy Travis, casemanager@DefendBrevard.com

Thank you for your attention to this matter.  If there are any questions, please reach out.

Sincerely,

**JESSICA J. TRAVIS, Esq.**
Florida Bar No. 76701
Email:  Jessica@DefendBrevard.com
**DefendBrevard.com**
1370 Bedford Drive, Ste. #104
Melbourne, FL 32940
321-728-7280
321-728-8020 (fax)
Eservice:  eservice1@defendbrevard.com
Eservice:  eservice2@defendbrevard.com

With:
**JERROD WILLIAMS, Esq.**
Florida Bar No. 122128
Email:  j.williams@lawfirmocala.com

Page 5 of 6

EXHIBIT A



Ph: 321-728-7280 / Fx: 321-728-8020
1370 Bedford Drive, Suite 104
Melbourne, Florida 32940
contact@DefendBrevard.com

&

**LEE FAIRCHILD, Esq.**
Florida Bar No. 109441
Email: l.fairchild@lawfirmocala.com
**LawFirmOcala.com**
207 N. Magnolia Avenue
Ocala, FL 34475
Phone 352-390-2693
Eservice eservice@lawfirmocala.com, r.doyle@lawfirmocala.com, l.fairchild@lawfirmocala.com

**ATTORNEYS FOR PLAINTIFF JAMES E. LYONS**

Enclosures:

- Demand letters sent August 19, 2022
- List of health care providers for JAMES LYONS two years prior to the act of negligence. (Contained in demand letter to Heart of Florida.)
- Verified Medical Opinion signed by expert Dr. David Bellamy pursuant to Florida Statutes section 766.203.
- List of records provided to the expert. (Included in affidavit of Dr. David Bellamy.)
- DVD containing copies of records provided to expert, Dr. Bellamy.
- Authorization for Release of Protected Health Information pursuant to Florida Statutes section 766.1065.

Page 6 of 6

EXHIBIT A

<u>VERIFIED MEDICAL OPINION PURSUANT TO FLORIDA STATUTE 766.203(3)</u>

<u>AFFIDAVIT OF DAVID BELLAMY, M.D.</u>

STATE OF FLORIDA

COUNTY OF MARION

COMES NOW DAVID BELLAMY, M.D., who personally appeared before me and, after being duly sworn, deposes and says:

1. I am DAVID BELLAMY, M.D., am a licensed physician and aboard-certified orthopedic surgeon.  I am licensed to practice medicine in Florida.

2. I am an expert as defined by Florida Statute 766.202.

3. I am familiar with the prevailing standards of medical care that are appropriate for reasonably prudent health care providers and physicians practicing in the state of Florida, including Marion County and other similar communities.

4. I have never been disqualified as an expert in court when rendering an expert opinion.  I certify that I have never been found guilty of fraud or perjury in any jurisdiction.  I am not aware of any conflict of interest between myself or any of the healthcare providers involved in this matter.

5. I give testimony herein based upon my personal knowledge, education, training and experience and my expert review of certain medical records pertaining to JAMES LYONS. I reserve the right to amend this information in the event that further information is provided.

6. The records relating to JAMES LYONS that I have reviewed include:

   a. Marion County Jail video

   b. CAD (Computer Aided Dispatch) records

EXHIBIT A

d.  JAMES LYONS booking photo shows he suffers from a chin-to-chest deformity. This deformity was also noted in the jail medical paperwork.

e.  The phrase "chin to chest" deformity medically implies a condition such as ankylosing spondylitis.

f.  Documentation of this deformity shows acknowledgement of a severe spinal condition that places JAMES LYONS at extremely high risk for a catastrophic spinal cord injury from minimal trauma.

g.  The order for JAMES LYONS to receive a ground level bed is also acknowledgment of his medical fragility.

h.  With the above documented on admission paperwork, medical and corrections staff should have been informed and educated on JAMES LYONS's fragility.

i.  With information of his risk for catastrophic injury, the corrections officers would be better prepared to handle any need to restrain JAMES LYONS or would have already had him in a medical unit.

j.  JAMES LYONS reports that he was prescribed opioids and benzodiazepines for his condition and the medical records show that morphine and diazepam withdrawal protocol were ordered for Mr. Lyons on the date of his arrest but it appears these medications were never provided to him.

k.  Medical intake records also noted that JAMES LYONS was a daily user of alcohol and benzodiazepines.

l.  The abrupt cessation of opioids, alcohol, and benzodiazepines can cause seizures.

m. On March 18, 2021, JAMES LYONS suffered an apparent seizure.

n.  JAMES LYONS was restrained during and/or after this seizure.

EXHIBIT A

    c.  Greenteam Use of Force Report

    d.  Marion County Jail incident report

    e.  Marion County Jail medical records.

    f.  Marion County Fire Rescue records

    g.  Advent Health Ocala medical (ER) records

    h.  Shands Hospital and Rehabilitation medical records

    i.  Park Meadows medical records

    j.  Arbor Springs Rehabilitation Center medical records

    k.  Arbor Springs letter with diagnosis of quadriplegia

    l.  Dr. Reddy (post-release primary care physician) medical records

7. Based on my review of the aforementioned records, it is my opinion that within a reasonable degree of medical probability, that the standard of care given to JAMES LYONS by HEART OF FLORIDA, the MARION COUNTY SHERIFF'S OFFICE, and staff fell below the acceptable standards of medical care in the following ways, among others:

    a.  On March 15, 2011, JAMES LYONS was incarcerated at the Marion County Jail.

    b.  HEART OF FLORIDA CENTER was the contracted medical provider for the MARION COUNTY SHERIFF'S OFFICE.

    c.  Intake medical paperwork noted that JAMES LYONS suffered from a medical condition called ankylosing spondylosis a condition that can cause a hunched posture that makes it hard for the sufferer to breath and spine fragility which increases the risk of fracture.

EXHIBIT A

   o.  JAMES LYONS was seen moving his arms and legs during this encounter but not when being placed on a stretcher.

   p.  JAMES LYONS spent several hours in the infirmary without his spinal fracture being recognized.

   q.  Over the day, through medical records, it can be seen that JAMES LYONS's neurologic condition is worsening.

   r.  JAMES LYONS was ultimately transferred to a hospital after he developed low blood pressure, a symptom of spinal cord injury, but his spinal cord injury still went undiagnosed.

   s.  Upon arrival to Shands Hospital, JAMES LYONS was placed in a device that lines his spine and spinal cord back to its anatomic position.

   t.  JAMES LYONS was placed in this device very soon after arrival. This is done to halt progression of his paralysis and avoid further injury.

   u.  A spine fusion was then performed on JAMES LYONS the next day.

   v.  As a result of the poor care, JAMES LYONS suffered severe permanent paralysis.

8. Based on the foregoing, it is my opinion that within a reasonable degree of medical probability grounds exist for JAMES LYONS to initiate a medical negligence claim against HEART OF FLORIDA CENNTER, the MARION COUNTY SHERIFF, and/ or staff. Nothing was done to prevent or minimize the risk of seizure. JAMES LYONS's spinal abnormality is well documented using a catch phrase commonly used in ankylosing spondylitis. He is ordered modified living conditions due to his frailty. It appears that corrections officers are not warned or educated on his fragility. His spine is subsequently injured during an altercation with corrections officers who may have been unaware of his

EXHIBIT A

condition.  He then sat for several hours in the infirmary with an undiagnosed spinal

fracture and dislocation without medical care.  This delay led to a worse outcome than he

might have otherwise had.

Under penalties of perjury, I certify that I have read the foregoing and the facts stated in it are

true.

*D Bellamy*

DAVID BELLAMY, M.D.


The foregoing instrument was acknowledged before me on this 13th day of March, 2022

by DAVID BELLAMY, M.D., who is personally known to me or who has presented the

identification below and who did take an oath that the information contained therein is true and

correct to the best of his knowledge and belief.

*Lee L Fairchild*

(signature of notary)

Lee L. Fairchild, Marion County, Ocala, Florida

(printed name of notary)
Notary Public, State and County aforesaid

My commission expires: 7/5/2025

Type of identification: Florida Driver's License